UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HAMILCAR BARCA IP LLC, | § |
| Plaintiff, | § |
| | §  Case No. 1:25-cv-00620 |
| v. | § |
| | §  JURY TRIAL DEMANDED |
| NVIDIA CORP., | § |
| Defendant. | § |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Hamilcar Barca LLC ("Hamilcar"), by and through its attorneys, for its Complaint against Defendant NVIDIA ("Defendant" or "NVIDIA"), and demanding trial by jury, hereby alleges, on information and belief with regard to the actions of NVIDIA and on knowledge with regard to its own actions, as follows:

## I.     INTRODUCTION

1.      This is a patent case relating to inventions developed by MediaTek in the 2000s—inventions that have since been growing in popularity and concomitant value. Hamilcar contacted Nvidia about its infringement of the patents late in 2022, offering to discuss the matter and a potential patent license. Since then, Hamilcar has patiently sought to resolve this matter without litigation.

2.      Hamilcar has made multiple technical presentations to Nvidia to address its questions and arguments about infringement and validity, and Hamilcar

has provided detailed claim charts and technical analyses along the way. Nvidia has offered no meritorious defenses to liability.

3.      In a further effort to resolve the matter, Hamilcar also made a specific and reasonable license offer. Nvidia has not responded to that offer.

4.      Hamilcar believes that, to avoid further prejudice to its interests, it is now left with no choice but to seek judicial relief.

## II.    NATURE OF THE ACTION

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq*., to obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States, of products, methods, processes, services and/or systems that infringed Plaintiff's United States patents, as described herein.

6.      Defendant manufactured, provided, used, sold, offered for sale, imported, and/or distributed infringing products and services, and encouraged others to use its products and services in an infringing manner, as set forth herein.

7.      Plaintiff seeks past damages and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents, as defined below.

## III.    PARTIES

8.      Plaintiff Hamilcar Barca IP LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 5204 Bluewater Drive, Frisco, Texas 75036.

9. Hamilcar is the owner of the entire right, title, and interest in the Asserted Patents, as defined below, including the right to sue for and collect all damages and to seek and obtain any other relief for infringement.

10. Defendant NVIDIA Corp. is a Delaware corporation with a regular and established physical place of business at 11001 Lakeline Blvd Suite #100 Bldg. 2, Austin, TX 78717. NVIDIA is registered to transact business in the State of Texas and may be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## IV. JURISDICTION AND VENUE

11. This is an action for patent infringement, which arises under the patent laws of the United States; in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285.

12. This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1332, and 1338(a).

13. This Court has personal jurisdiction over Defendant in this action pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least the substantial business the Defendant conducts in this forum.

14. Defendant has committed acts of infringement in this District directly and through third parties by, among other things, making, selling, advertising (including through websites), offering to sell, distributing, and/or importing products and/or services that have infringed and continue to infringe the Asserted Patents as defined below.

15.     Defendant has, directly or through its distribution network, purposefully and voluntarily placed infringing products in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas.

16.     Defendant has committed direct infringement in Texas and this District.

17.     Defendant has committed indirect infringement based on acts of direct infringement in Texas and this District.

18.     Defendant has transacted and continues to transact business within this District.

19.     Defendant derives substantial revenues from its infringing acts in this District, including from its manufacture and sale of infringing products in the United States.

20.     Defendant has had at least one regular and established place of business in this District since at least 2009, including a regional office located at 11001 Lakeline Blvd Suite #100 Bldg. 2, Austin, TX 78717.

21.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business and has committed acts of infringement in this District. Defendant's presence in this District is substantial, including at least at its regional office located in Austin, Texas.

22.     On information and belief, Defendant's presence in this District is highly material to its infringement. For example, Defendant additionally employs and has employed individuals in this District who have been vital to the development and implementation of the accused products. A Principal Technical Product Manager for

NVIDIA, for instance, lives and works in Austin. This employee was a Director of High-Performance Computing ("HPC") Engineering at Arm Holdings plc, which is the developer of certain architecture used in NVIDIA's accused products that largely establishes its infringement of at least one of the asserted patents. This employee contributed significantly to NVIDIA's incorporation of Arm architecture into products such as the NVIDIA GRACE central processing unit ("CPU"), which also implements certain standards, including one set by the Serial Advanced Technology Attachment ("SATA") International Organization ("SATA-IO").

23.     Further, there are four HPC centers that deploy NVIDIA Grace CPU-only based systems, only two of which are in the United States. One is located in Los Alamos, New Mexico at Los Alamos National Laboratory, and the other is in this District at the University of Texas at Austin's Texas Advanced Supercomputing Center. Many witnesses knowledgeable about the infringing products and their implementation are located within this District.

24.     Defendant has also been collaborating with Dell Technologies Inc., headquartered in this District, to integrate the Nvidia Grace CPU in Dell's server products. For example, Defendant has collaborated with Dell to integrate the Nvidia GB200 NVL72 variant of the Grace CPU in the Dell PowerEdge XE9712 server. *See* Exs. E and F. Witnesses at Dell will have important information on the implementation of the Grace CPU product integrated into Dell's server products, including the Dell PowerEdge XE9712 server.

25.     Further, Defendant and Dell collaborated to build the HPC system deployed at the University of Texas at Austin's Texas Advanced Supercomputing Center.

26.     Moreover, Defendant is deploying an AI cluster that comprises an Nvidia DGX SuperPOD at Texas A&M University in College Station, Texas. The Nvidia DGX SuperPOD comprises at least 760 Nvidia Grace Hopper GPUs that are paired with Grace CPUs.

27.     Defendant's HPC software team, with members based in Austin, have collaborated with Arm's ecosystem engineers, some of whom are also based in Austin, to develop an Nvidia ARM HPC Developer Kit, which is an integrated hardware and software platform designed to facilitate the development, evaluation, and benchmarking of high-performance computing (HPC), artificial intelligence (AI), and scientific computing applications on heterogeneous GPU- and CPU-accelerated systems, such as the Grace CPU HPC system deployed at the University of Texas at Austin's Texas Advanced Supercomputing Center.

28.     Additionally, Defendant—directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents—has made, shipped, distributed, used, offered for sale, and/or sold its products in the United States and this District. Defendant has purposefully and voluntarily placed into the stream of commerce one or more of its products that infringe the Asserted Patents (as defined below) with the awareness and/or intent that the products would be purchased by consumers and businesses in this District. Defendant knowingly and

purposefully shipped infringing products into, out of, and within this District through an established distribution channel. These infringing products have been purchased by consumers and businesses in this District.

## V. COUNTS OF PATENT INFRINGEMENT

29.    Plaintiff alleges that Defendant has infringed the following United States patents (collectively, the "Asserted Patents"):

United States Patent No. 8,086,938 (the "'938 Patent") (Exhibit A); and
United States Patent No. 8,407,783 (the "'783 Patent") (Exhibit B).

## COUNT ONE
## INFRINGEMENT OF U.S. PATENT 8,086,938

30.    Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

31.    The '938 Patent, entitled "Method for Processing Noise Interference," was filed on December 19, 2007 and claims priority to a Taiwan patent application filed on April 22, 2004. The '938 Patent was duly and legally issued by the United States Patent and Trademark Office on December 27, 2011, and originally assigned to Mediatek Inc.

32.    The '938 Patent is directed to patent-eligible subject matter and is valid and enforceable.

## Technical Description and Background

33.    The '938 Patent is directed to a method for processing noise interference according to an error feedback mechanism of a Serial Advanced Technology Attachment ("SATA"). '938 Patent at 1:15–26.

34.    As the '938 Patent explains, prior art SATA specifications specify a resending mechanism in which nearly all Frame Information Structures ("FIS") are resent to prevent error caused by noises. '938 Patent at 1:57–2:29. However, the data FIS is not protected by this resending mechanism because "the data FIS is not resent" in the event of data error. *Id.* at 2:29–33. As a result, "the error data may be received," and in more serious instances, "some portions of primitives [(i.e., types of data control codes)] may be mistaken as data bits, thereby making the number of data sets to be sent to the device greater than it should be" and potentially halting the system. *Id.* at 2:33–37.

35.    To overcome these and other problems, the '938 Patent utilizes "a method for processing noise interference in order to prevent the system from being stopped when the data FIS is interfered by noises." '938 Patent at 2:48–51. The method "utilizes the ATA/ATAPI error feedback mechanism to overcome the problem of system halt caused by noise interference when the data FIS is being sent." *Id.* at 3:41-44.

36.    Claim 1, for example, includes a "type detecting step for detecting whether an FIS (Frame Information Structure) is a data type FIS" and a "responding step for asserting the CHECK bit of the ATAPI Status Register when the FIS is data type." These steps are part of the process useful to overcome problems caused by noise interference when the FIS is a data type FIS.

## Direct Infringement

37.    Defendant, without authorization or license from Plaintiff, has directly infringed the '938 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through use (including for testing purposes) of certain electronic devices and products that infringes one or more claims of the '938 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.

38.    Exemplary infringing products include but are not limited to any device or system implementing SATAv3 or later, including but not limited to the NVIDIA SN2000 switch and NVIDIA DGX Systems, hereinafter "'938 Accused Products."

39.    Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's infringing acts, but Plaintiff reserves the right to name additional products, known to or learned by Plaintiff or revealed during discovery, and include them more specifically in the definition of '938 Accused Products.

40.    As a specific, nonlimiting example, Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the use of devices that utilize the SATA 3.0 interface—for example, the NVIDIA DGX-1, hereinafter "'938 Exemplary Accused Product." Use of the '938 Exemplary Accused Product meets all limitations of at least claim 1 of the '938 Patent, either literally or under the doctrine of equivalents as demonstrated in the attached claim chart marked as Exhibit C.

## Indirect, Induced, and Contributory Infringement

41.    Defendant, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has committed acts of indirect infringement of at least one

claim of the '938 Patent, pursuant to 35 U.S.C. §§ 271(b) and (c) by actively inducing or contributing to the acts of direct infringement performed by others in the United States, the State of Texas, and the Western District of Texas.

42.    Defendant, through affirmative acts, has induced its distributors, manufacturers, testers, customers, and/or end users, such as designers and end users of '938 Accused Products, to directly infringe the '938 Patent by using the '938 Accused Products, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

43.    Defendant has knowingly contributed to direct infringement by its customers through affirmative acts and by having made, imported, sold, and/or offered for sale, and knowingly making, importing, selling, and/or offering to sell within the United States the '938 Accused Products which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the '938 Patent.

44.    The affirmative acts of inducement by Defendant include, but are not limited to, any one or a combination of: (i) designing infringing devices for manufacture according to specification; (ii) collaborating on and/or funding the development of the infringing devices and/or technology; (iii) soliciting and sourcing the manufacture of infringing devices; (iv) licensing and transferring technology and know-how to enable the manufacture of infringing devices; (v) enabling and encouraging the use, sale, or importation of infringing devices by its customers; (vi)

advertising the infringing devices and/or technology; and (vii) providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, product specifications, user manuals, marketing materials, and instructions, including on Defendant's website.

45.    Defendant has contributed to the direct infringement of the '938 Patent by its customers, and other third parties; and Defendant, its customers, and other third parties have directly infringed.

46.    Defendant has imported, exported, made, and/or sold parts, components, or intermediate products to customers and third parties that, once assembled, infringe the '938 Patent by the sale and/or use of the assembled devices.

47.    Defendant has made, used, sold, and/or offered to sell infringing devices and/or memory products, which are especially made to design and specification, and are not staple products or commodities with substantial non-infringing use.

48.    Defendant has known that the induced conduct constitutes infringement and intended such infringement at the time of committing the aforementioned acts, such that the acts and conduct were committed with the specific intent to induce infringement, or has deliberately avoided learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

49.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages and is entitled to an award of damages adequate to compensate it for such

infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## Willful Infringement

50.    Defendant has had actual knowledge of the '938 Patent and its infringement thereof at least as of receipt of Plaintiff's notice letter dated December 13, 2022.

51.    On information and belief, Defendant has numerous lawyers and other active agents of Defendant who regularly review patents and published patent applications relevant to technology in the fields of the Asserted Patents.

52.    Defendant has been issued over 10,000 patents held in the name of the Defendant or a related entity, many of which are patents prosecuted in the USPTO in the same technology area as the '938 Patent, giving Defendant intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances, and extent of Defendant obtaining actual knowledge of the '938 Patent prior to the commencement of this lawsuit will be confirmed during discovery.

53.    Since at least December 13, 2022 when Defendant was expressly notified of its infringement, Defendant's infringement of the '938 Patent was either known or was so obvious that it should have been known to Defendant.

54.    Notwithstanding this knowledge, Defendant knowingly or with reckless disregard infringed the '938 Patent. Defendant continued and continues to commit acts of infringement despite being on notice of infringement and aware of an

objectively high likelihood that its actions constituted infringement of Plaintiff's valid patent rights, either literally or equivalently.

55.    Defendant is therefore liable for willful infringement, and Plaintiff accordingly seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

56.    Plaintiff has incurred substantial damages, including monetary damages.

57.    Therefore, Plaintiff is entitled to actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT 8,407,783

58.    Plaintiff incorporates by reference the allegations in paragraphs 1-29 as if fully set forth herein.

59.    The '783 Patent, entitled "Computing System Providing Normal Security and High Security Services," was filed on June 17, 2010 and duly and legally issued by the United States Patent and Trademark Office on March 26, 2013, and originally assigned to Mediatek Inc.

60.    The '783 Patent is directed to patent-eligible subject matter and is valid and enforceable.

### Technical Description and Background

61.    The '783 Patent is directed to "computing systems providing normal security services and high security services with efficient resource utilization." '783 Patent at 1:8–10.

62.     The '783 Patent explains that in many modern electronic devices, "two isolated operating environments are required for maintaining system security." '783 Patent at 1:12–16. Some services, such as "makng a phone call and playing java games may operate in a normal security environment." *Id.* at 1:17–19. However, some activities such as transacting with credit cards online or e-banking services may require higher security in order to protect sensitive personal information. *Id.* at 1:19–25.

63.     The prior art relies on the Trustzone hardware architecture, developed by ARM, that uses a single processor core to provide both normal and high security environments, which reduces silicon size, manufacturing costs, and power consumption compared to solutions with separate cores. '783 Patent at 1:26–33. It switches between normal and high security states in a time-sliced manner to isolate sensitive data from potential threats. *Id.* at 1:33–40. However, this design leads to low utilization of resources dedicated to high security, as these resources are rarely used. *Id.* at 1:41–45. To improve resource usage, the processor may switch frequently between security states, especially for services involving sensitive data, but this increases latency and power consumption due to the switching process. *Id.* at 1:45–53.

64.     The '783 Patent simultaneously reduces switching of security environments while increasing utilization of hardware resources by allowing the processor to switch between normal and high security states and assigning user access rights to requests based on these states and the protection level of the

14

computing system. '783 Patent at 1:62–67, 6:51–57. In the high security state, user access rights grant permission to use hardware resources, which have been organized into different security levels, at a higher security level compared to the normal state. *Id.* at 1:67–2:3. And for a particular security state of the processor core, the user access right assigned for a lower protection level covers the user access right assigned for a higher protection level. *Id.* at 6:62–65. The access right checker evaluates whether the request has the necessary authorization to access the required resources based on the assigned user access rights and the security levels of the resources. *Id.* at 2:3–7. If the request is authorized, it is allowed to execute; if not, an exception is triggered. *Id.* at 2:7–12.

## Direct Infringement

65.     Defendant, without authorization or license from Plaintiff, has directly infringed and continues to directly infringe the '783 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271, including through making, using (including for testing purposes), designing, manufacturing, importing, distributing, selling, and offering for sale electronic devices and products that infringe one or more claims of the '783 Patent. Defendant is thus liable for direct infringement pursuant to 35 U.S.C. § 271.

66.     Exemplary infringing products include but are not necessarily limited to the ARMv8-A-compliant data or central processing units, and other systems and devices made, imported, or sold by NVIDIA supporting the ARMv8-A or later architecture ("'783 Accused Products"). These include, for example NVIDIA Mellanox

BlueField SmartNIC and Bluefield-2 DPUs and Bluefield-3 DPUs with ARM A72 or A78 cores.

67.     Plaintiff names these exemplary infringing instrumentalities to serve as notice of Defendant's infringing acts, but Plaintiff reserves the right to name additional infringing products, known to or learned by Plaintiff or revealed during discovery, and include them more specifically in the definition of '783 Accused Products.

68.     As another specific, nonlimiting example, Defendant is liable for direct infringement pursuant to 35 U.S.C. § 271 for the manufacture, use, sale, offer for sale, importation, or distribution of integrated circuit devices as shown in NVIDIA GRACE CPUs incorporating Neoverse V2 Core, hereinafter "'783 Exemplary Accused Product." The '783 Exemplary Accused Product meets all limitations of at least claim 1 of the '783 Patent, either literally or under the doctrine of equivalents as demonstrated in the attached claim chart marked as Exhibit D.

## Willful Infringement

69.     Defendant has had actual knowledge of the '783 Patent and its infringement thereof at least as of receipt of Plaintiff's notice letter on December 13, 2022.

70.     On information and belief, Defendant has numerous lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the fields of the Asserted Patents.

71.     Defendant has been issued over 10,000 patents held in the name of the Defendant or a related entity, many of which are patents prosecuted in the USPTO in the same technology area as the '783 Patent, giving Defendant intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances and extent of Defendant obtaining actual knowledge of the '783 Patent prior to the commencement of this lawsuit will be confirmed during discovery.

72.     Since at least December 13, 2022 when Defendant was expressly notified of its infringement, Defendant's infringement of the '783 Patent was either known or was so obvious that it should have been known to Defendant.

73.     Notwithstanding this knowledge, Defendant has knowingly or with reckless disregard continued to infringe the '783 Patent. Defendant has continued to commit acts of infringement despite being on notice of an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights, either literally or equivalently.

74.     Defendant is therefore liable for willful infringement and Plaintiff accordingly seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

### Indirect, Induced, and Contributory Infringement

75.     Defendant, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, have committed and continue to commit acts of indirect infringement of at least one claim of the '783 Patent, pursuant to 35 U.S.C. §§ 271(b) and (c) by actively inducing or contributing to the acts of direct infringement

performed by others in the United States, the State of Texas, and the Western District of Texas.

76.    Defendant through affirmative acts has induced its distributors, manufacturers, testers, customers, and/or end users, such as designers and end users of devices and products supporting ARMv8-A or later architecture, to directly infringe the '783 Patent by making, using, selling, and/or importing the '783 Accused Products, with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or equivalently.

77.    Defendant has knowingly contributed to direct infringement by its customers through affirmative acts and by having imported, made, sold, and/or offered for sale, and knowingly importing, making, selling, and/or offering to sell within the United States the '783 Accused Products which are not suitable for substantial non-infringing use and which are especially made or especially adapted for use by its customers in an infringement of the '783 Patent.

78.    The affirmative acts of inducement by Defendant include, but are not limited to, any one or a combination of: (i) designing infringing systems for manufacture according to specification; (ii) collaborating on and/or funding the development of the infringing systems and/or technology; (iii) soliciting and sourcing the manufacture of infringing systems; (iv) licensing and transferring technology and know-how to enable the manufacture of infringing systems; (v) enabling and encouraging the use, sale, or importation of infringing systems by its customers; (vi)

advertising the infringing systems and/or technology; and (vii) providing data sheets, technical guides, demonstrations, software and hardware specifications, installation guides, product specifications, user manuals, marketing materials, and instructions.

79.    Defendant has contributed to the direct infringement of the '783 Patent by its customers, and other third parties; and Defendant, its customers, and other third parties have directly infringed.

80.    Defendant has imported, exported, made and/or sold parts, components, or intermediate products to customers and third parties that, once assembled, infringe the '783 Patent by the sale and/or use of the assembled memories and/or devices.

81.    Defendant has made, used, sold, and/or offered to sell infringing data and central processing units supporting ARMv8-A or later architecture, which are especially made to design and specification, and are not staple products or commodities with substantial non-infringing use.

82.    Defendant knew that the induced conduct would constitute infringement and intended that infringement at the time of committing and continuing to commit the aforementioned acts, such that the acts and conduct have been committed with the specific intent to induce infringement, or to deliberately avoid learning of the infringing circumstances at the time of committing these acts so as to be willfully blind to the infringement that was induced.

83.    As a result of Defendant's infringement, Plaintiff has suffered monetary damages and is entitled to an award of damages adequate to compensate it for such

infringement which, by law, can be no less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 US.C. § 284.

84.     Plaintiff has incurred and will continue to incur substantial damages, including monetary damages.

85.     Therefore, Plaintiff is entitled to actual and/or compensatory damages, reasonable royalties, pre-judgment and post-judgment interest, enhanced damages, and costs.

## VI.    NOTICE

86.     Plaintiff has complied with the notice provision of 35 U.S.C. § 287 and has not distributed, sold, offered for sale, or made any patented articles embodying the Asserted Patents. This notice provision has been complied with by all relevant persons at all relevant times.

87.     Defendant has had actual knowledge of the Asserted Patents and its infringement thereof at least as of receipt of Plaintiff's notice letters on December 13, 2022.

## VII.   JURY DEMAND

88.     Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendant as follows:

A. That the Court determine that one or more claims of the '938 Patent has been and continues to be infringed by Defendant, literally and/or under the doctrine of equivalents;

B. That the Court determine that one or more claims of the '783 Patent has been and continues to be infringed by Defendant, literally and/or under the doctrine of equivalents;

C. That the Court determine that one or more claims of the '938 Patent has been and continues to be indirectly infringed by Defendant;

D. That the Court determine that one or more claims of the '783 Patent has been and continues to be indirectly infringed by Defendant;

E. That the Court award damages adequate to compensate Plaintiff for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs;

F. That the Court find this case to be exceptional pursuant to 35 U.S.C. § 285;

G. That the Court determine that Defendant's infringements have been willful;

H. That the Court award enhanced damages against Defendant pursuant to 35 U.S.C. § 284;

I. That the Court award Plaintiff its reasonable attorneys' fees; and

J. That the Court award such other relief to Plaintiff as the Court deems just and proper.

## IX.    RESERVATION OF RIGHTS

Plaintiff's investigation is ongoing, and certain material information remains in the sole possession of Defendant or third parties, which will be obtained via discovery herein. Plaintiff expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with FED. R. CIV. P. 15.

Dated:  April 25, 2025

Respectfully submitted,

*/s/ Scott W. Breedlove*

E. Leon Carter
lcarter@carterarnett.com
Texas Bar No. 03914300
Scott W. Breedlove
sbreedlove@carterarnett.com
Texas Bar No. 00790361
Omer Salik
osalik@carterarnett.com
Texas Bar No. 24128282
Howard L. Lim
hlim@carterarnett.com
Texas Bar No. 24092701
Alexis L. Ritzer
aritzer@carterarnett.com
Texas Bar No. 24115116
CARTER ARNETT PLLC
8150 N. Central Expy, 5th Floor
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

**ATTORNEYS FOR PLAINTIFF
HAMILCAR BARCA IP LLC**